UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
MAUREEN REGAN,

                              Plaintiff,

      - against -

PAULA W. CONWAY,

                              Defendant.
----------------------------------------------------------------x

**MEMORANDUM OF DECISION AND ORDER**

CV 07-3207 (ADS) (ARL)

A P P E A R A N C E S :

    MARK S. FREY, ESQ.
    Attorney for the Plaintiff
    119 Fifth Avenue, Third Floor
    New York, New York 10003

    AKERMAN SENTERFITT, LLP
    Attorneys for the Defendant
    335 Madison Avenue, Suite 2600
    New York, New York 10017
    By:    Scott Michael Kessler, Esq.
              Elissa Paulette Fudim, Esq., of Counsel

**SPATT, District Judge.**

Following the jury verdict in this case, the Court rendered a decision on May 10, 2010, in which the request by the plaintiff Maureen Regan to recover her reasonable attorneys' fees and court costs from the defendant Paula Conway, was granted. In response, in his motion for attorneys' fees and costs, plaintiff's counsel stated that "the fair and reasonable amount of plaintiff's attorneys fees and costs to be awarded in this matter is $203,617.40." This includes the attorneys' fees in the total amount of $195,857.50 plus costs of $7,759.90.

Plaintiff's counsel stated in his declaration that the amount of his fee "is based upon

contemporaneous time records maintained by my office, entries made into my computer based Timeslips time billing software program, and a reconstruction of the extensive file maintained by my office in this matter." (Pltf's Declaration at 2).

Plaintiff's counsel also advised the court that "at various times I was assisted in this matter by Eric Evans and Zachary Kozak, two junior attorneys who worked under my supervision." (Pltf's Declaration at 2). Annexed to the plaintiff's attorney's motion are exhibits consisting of time records maintained in his office, together with a summary. Plaintiff's counsel also explained that not all the time spent on this matter was reflected in the time records. For example, while on this trial, he did not make entries in his time records.

It was also noted by plaintiff's counsel that his retainer agreement with Maureen Regan was set at $325.00 per hour, with a possible increase. He states that he is staying with the $325.00 per hour notwithstanding the extensive litigation and the trial that occurred in this case. Also, according to plaintiff's counsel, his hourly costs of $325.00 for an attorney of his experience in a Manhattan based practice, is, in his view, "far below current market value."

Plaintiff's counsel was admitted to practice in New York in 1982 and has "appeared in and tried cases before virtually all of the courts in New York City and the surrounding communities." He is admitted to practice in the United States District Courts for the Southern and Eastern Districts, in the Second Circuit Court of Appeals and before the United States Patent and Trademark Office. Currently, most of his practice is devoted to representing clients in the entertainment industry.

In opposition to the plaintiff's application for attorneys' fees, the defendant's counsel has asserted a three pronged defense. First, the defendant contends that the plaintiff should not be

awarded any counsel fees because, although the plaintiff prevailed on her breach of the implied covenant of good faith and fair dealing cause of action, so did the defendant on her counterclaim for breach of fiduciary duty, and the net result was that the plaintiff owes Conway at least $25,000. Therefore, asserts the defendant, there was no recovery by the plaintiff, and under those circumstances the only award of attorneys' fees which is reasonable is "no fee at all." See Farrar v. Hobby, 506 U.S. 103, 115, 113 S.C. 566, 121 L.Ed.2d 494 (1992).

The second defense to the award of attorneys' fees to the plaintiff is the general rule – as interpreted by defense counsel – that "it is rarely proper to award fees in an amount that exceeds the amount involved in the litigation." F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1264 (2d Cir. 1987). Here, the jury awarded Conway the sum of $65,000 on her counterclaim for breach of fiduciary duty, $25,000 more than the jury awarded the plaintiff on her one successful claim. Further, asserts defense counsel, even if the Court declines to offset the defendant's recovery from the plaintiff's verdict, the plaintiff only received a verdict in the sum of $40,000 and now the plaintiff is requesting $203,617.40 in counsel fees and costs. In the defendant's view, an attorneys' fee of between 5% and 25% of the plaintiff's recovery, namely between $2,000 and $10,000, would be fair and reasonable.

The third contention raised by the defendant is a multiple factor: (1) There are no contemporaneous time records for those services involved in billings of $52,182.50; (2) the plaintiff seeks to recover a multitude of fees, in the sum of $72,554.50, which are unrelated to her claim for breach of the implied covenant of good faith and fair dealing; (3) the plaintiff improperly seeks compensation for fees, in the sum of $2,775.00, generated in connection with the taking of depositions not relied upon at trial; the issuing of trial subpoenas to witnesses never

3

called at the trial; work on an expert report not used at the trial; and work on proposed jury instructions never filed with the court or served on opposing counsel; (4) plaintiff is requesting fees in connection with a small claims lawsuit between the parties filed prior to this action, in the sum of $877.50; and (5) finally, according to defendant's counsel, the plaintiff improperly seeks to recover for her attorney's time in making the instant fee application, in the sum of $3,737.50.

Summarizing the opposition to the plaintiff's fee application in the total sum of $203,617.40, defense counsel contends that this sum – at the least – should be reduced by the above named items, namely the sums of $52,182.50, $72,554.30, $2,775.00, $877.50 and $3,737.50. Deducting these sums from the plaintiff's fee request of $203,617.40 would leave the sum of $71,490.60. However, defendant's counsel also asserts that the net sum should be further reduced because many of the plaintiff's billing entries pertain to the litigation as a whole, as opposed to legal work for the plaintiff's only successful claim for breach of the covenant of good faith and fair dealing. The defendant's solution to this problem is to review the claims by the plaintiff that were involved in this lawsuit. There were (1) plaintiff's claim for breach of the covenant of good faith and fair dealing, (2) tortious interfering with contract and unjust enrichment, (3) injunctive relief, and (4) declaratory judgment. Also, there were defendant's counterclaims for breach of contract and breach of fiduciary duty. Defendant's counsel contends that the plaintiff prevailed on only one of these claims, namely the breach of the implied covenant of good faith and fair dealing. Therefore, says the defendant's counsel, the plaintiff should recover only one-sixth or (16%) of the remaining $71,490.60, which is the sum of $11,438.50, should the Court base its award on the plaintiff's submitted time entries.

In reply to the defendant's contentions, the plaintiff's counsel asserts that this is a case

4

where a legal fee was agreed upon in a contract signed by the defendant. Therefore, in a non-contingent fee case, such as this, the amount recovered is just one of the criteria the Court should consider in setting the fee. See Diamond D. Enterprises USA, Inc. v. Steinsvaag, 979 F.2d 14 (2d Cir. 1992). In addition, the plaintiff's counsel complains that the defendant chose to litigate the case to the maximum extent, including the imposition of eight counterclaims. Also, the plaintiff's counsel asserts that he has furnished the required billing records, "which are the contemporaneous time records maintained by counsel," there being no requirement that the actual invoices be produced. (Plaintiff's Reply Memorandum at 5).

The attorney for the plaintiff has explained why he does not have time records as to all the legal services he has performed in this case. He states "That a significant amount of times I spent on this matter was not billed." (Reply Declaration at 6). He further explains that the defendant produced "over 30,000 pages of documents, which he personally reviewed at all hours and in different places, but did not keep track of such hours, nor am I making a claim for same." (Reply Declaration at 6). He concedes that "There was much time that was not recorded or recreated," and that his time records "May not be as certain as those maintained by a large law firm with staff devoted exclusively to such matters." (Reply Declaration at 7, 8). However, he also contends that he kept contemporaneous written time records and entered his time contemporaneously into his computer based billing system, "as the time was spent."

## I. Discussion

### A. The Standards

In federal practice, the general rule is that each party bears his or her own attorneys fees. However, the parties may agree by contract to permit recovery of attorneys' fees. If the contract

is valid under state law, the federal court will enforce the contract as to attorneys' fees. The rule was well-stated in McGuire v. Russell Miller, Inc., 1 F.3d 1306 (2d Cir. 1993) as follows:

> In federal practice the general rule – known as the "American Rule" – is that each party bears its own attorneys' fees. See, e.g., Chambers v. NASCO, Inc., 501 U.S. 32, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991); Hensley v. Eckerhart, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983); Alyeska Pipeline Service Co. v. Wilderness Soc'y, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975); 6 James W. Moore et al., Moore's Federal Practice ¶ 54.78[1] (2d ed. 1993). However, parties may agree by contract to permit recovery of attorneys' fees, and a federal court, will enforce contractual rights to attorneys' fees if the contract is valid under applicable state law. See Alland v. Consumers Credit Corp., 476 F.2d 951, 956 (2d Cir. 1973); United States v. Carter, 217 U.S. 286, 322, 30 S.Ct. 515, 526, 54 L.Ed. 769 (1910). Although a district court has broad discretion in awarding attorneys' fees, and an award of such fees may be set aside only for abuse of discretion, see, e.g., ARP Films, Inc. v. Marvel Entertainment Group, Inc., 952 F.2d 643, 651 (2d Cir. 1991); Lerman v. Flynt Distributing Co., 789 F.2d 164, 166 (2d Cir.), cert. denied, 479 U.S. 932, 107 S.Ct. 404, 93 L.Ed.2d 357 (1986), where a contract authorizes an award of attorneys' fees, such an award becomes the rule rather than the exception. See Engel v. Teleprompter Corp., 732 F.2d 1238, 1241 (5th Cir. 1984) (reversing district court's denial of attorneys' fees with instructions to determine an appropriate award).

Initially, the Court notes that the fact that the plaintiff's counsel, Mark S. Frey, is a solo practitioner should not, based on that fact alone, reduce the reasonably hourly rate. See McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 97 n.6 (2d Cir. 2006) ("We want to caution, however, that district courts should not treat an attorney's status as a solo practitioner as grounds for an automatic reduction in the reasonable hourly rate . . . it would be error to use an attorney's status as a solo practitioner as an automatic deduction or short cut for determining the reasonable hourly rate.")

Also, regarding attorneys' fees, it is particularly important that in contracts such as the Collaborative Agreement at issue here, the language should be "unmistakably clear" regarding whether the parties to the agreement intend the attorneys' fees provision to apply to the dispute at issue. See Coastal Power International Ltd. v. Transcontinental Capital Corp., 182 F.3d 163, 165 (2d Cir. 1999). As previously noted by the Court, the attorneys' fee provision in the Collaborative Agreement does provide for the payment of attorneys' fees and costs to the plaintiff's counsel from the defendant Paula Conway as a result of the verdict in favor of the plaintiff in the breach of the implied covenant of good faith and fair dealing cause of action.

## B. The Historical Trail

The court has traced the history of the contractual fee agreement over the course of the years. A major case in this field is F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250 (2d Cir. 1987), in which it was held that such a "contractual fee" should be "reasonable". In general, the Court uses a "lodestar" method, in which the hours reasonably spent as determined by the court, are multiplied by the reasonable hourly rate. However, the lodestar analysis is subject to other factors related to this particular case. In Krear it was also noted that "New York Courts have stated that, as a general rule, they will rarely find reasonable an award to a plaintiff that exceeds the amount involved in the litigation." Id. at 1264.

In addition, in Krear, it was stated that "a general provision for the shifting of attorneys' fees does not authorize an award of fees for time spent in seeking the fees themselves." Id. at 1266. See also Doyle v. Allstate Insur. Co., 1 N.Y.2d 435, 444, 154 N.Y.S.2d 10, 14, 136 N.E.2d 484, 487 (1956); Swiss Credit Bank v. International Bank Ltd., 23 Misc.2d 572, 573-74 200 N.Y.S. 828, 830-31 (Sup. Ct. 1960); Zauderer v. Barcelona, 130 Misc.2d 234, 236, 495

7

N.Y.S.2d 881, 882-83 (Civ.Ct. 1985).

In Diamond D. Enterprises USA, Inc. v. Steinsvaag, 979 F.2d at 19, the District Judges were cautioned to scrutinize these fee requests "to ascertain whether they are reasonable." The Court in Diamond reviewed the general rule that "New York Courts will rarely find reasonable an award to a plaintiff that exceeds the amount involved in the litigation." However, the Court in Diamond stated that "This is only a rule of thumb . . . it is a starting point in the process of ultimately determining whether a fee award is reasonable." Id. at 20. The Diamond court also warned that, ". . . another index of reasonableness is whether the fee arrangement is grossly disproportionate to the arrangement the plaintiff would have been expected to make with counsel in the absence of a fee-shifting agreement." Id. (quoting Krear, 810 F.2d at 1263) (citing Equitable Lumber Corp. v. 11A Loud Dev. Corp., 38 N.Y.2d 516, 524, 381 N.Y.S.2d 459, 465, 344 N.E.2d 391, 397 (1976)). Also, in Diamond, the court stated that "In non-contingent fee cases, the amount recovered is just one of the many criteria the district court considers in setting attorney's fees." Id. at 20.

In its task, this Court was also assisted by two District Court opinions, which ably reviewed the applicable law and the principles involved. In S.D. New York Antidote International Films, Inc. v. Bloomsbury Publishing, PLC, 496 F. Supp. 2d 362 (S.D.N.Y. 2007), the jury awarded $110,000 in compensatory damages and $6,500 in punitive damages. Counsel for the plaintiff sought attorneys' fees pursuant to a contract provision, in the sum of $850,000 and $214,116 in expenses. Judge Rakoff reviewed the basic principle that New York courts have stated that, as a general rule, they will rarely find reasonable an award that exceeds the amount involved in the litigation. However, he found an exception to the general rule, "where the court

finds that the benefits of the litigation reached far beyond the amount sought in the immediate suit, such as in cases where there are transcending principles involved . . ." 496 F. Supp. 2d at 364 (quoting Colon v. Automatic Retailers Ass's Serv., Inc., 74 Misc.2d 478, 343 N.Y.S.2d 874, 883 (Civ.Ct. 1972)). Finding that the case "is not wholly without transcending principles that make it economically feasible and reasonable that a fee be paid in excess of the amount involved in the litigation," Judge Rakoff authorized a fee of $279,175 in attorneys' fees and $70,325 in expenses. Id. at 365 (internal quotation marks and citations omitted).

Finally, and more recently, in S.D. New York HSH Nordbank AG New York Branch v. Swerdlow, 2010 WL 1141145 (S.D.N.Y. 2010), a case involving a judgment in the sum of 40 million dollars, Judge Denise Cote reviewed the law with regard to a contractual counsel fee, including the rule that a contract providing an award of attorneys' fees to a prevailing party is enforceable, "so long as those amounts are not unreasonable." 2010 WL 1141145, at *5 (quoting Diamond, 972 F.3d at 19). "Thus, in addressing a contractual claim for attorneys' fees a court must determine what constitutes 'a reasonable amount of fees'." Id. (quoting from McGuire v. Russell Miller, Inc., 1 F.3d 1306, 1315 (2d Cir. 1993)). In determining the reasonableness of attorneys' fees in the context of a contractual claim, "[i]t is appropriate for a court to consider the amount of fees requested in relation to the amount of damages at stake in the litigation." Id., at *6. A court may not award fees for the time spent by counsel seeking those fees. See Krear 810 F.2d at 1266. With regard to detailed contemporaneous billing records, Judge Cote stated: "The Court is not, however, required to set forth item-by-item findings concerning what may be countless objections to individual billing items." Swerdlow, 2010 WL 1141145, at *6.

C.  **What Is A Reasonable Fee?**

In its determination of the reasonable attorneys' fee for counsel for the plaintiff Maureen Regan, the Court reviews with some admiration, the words of the Hon. Alex Kozinski of the Ninth Circuit in Blackburn v. Gottel-Blanton, 898 F.2d 95 (9th Cir. 1990).  In Blackburn, Judge Kozinski describes "a case of litigation run amok."  He reviews a lawsuit "fueled by bad feelings . . . well-nigh impossible to bring to a halt."  Judge Kozinski concludes his realistic discussion as follows:

> Yet the parties trudged through four years of expensive and frustrating litigation all the same.  As is quite often the case when litigation ends, neither side will be satisfied with the result we reach today.

898 F.2d at 96, 99.

Reviewing this case, the Court notes that unlike the case in Blackburn it is not a "minor dispute."  There was a real controversy between the parties concerning a major written work of value.  However, it has mushroomed into a "full blown war of attrition in which both sides suffered substantial casualties."  And, in all probability "neither side will be satisfied with the result."  Id. at 99.

Mark S. Frey, Esq., the plaintiff's counsel has worked diligently and assiduously on this lawsuit as have counsel for the defendant.  Frey declares that a "fair and reasonable amount of plaintiff's attorneys' fees and costs to be awarded in this matter is $203,617.40."  He apparently concedes that not all the time he has given in this matter is based on contemporaneous time records.  His fee application is also based on "a reconstruction of the extensive file" in his office.  He also states that "not all the time spent on this matter was reflected in the time records."

(Declaration of Frey at 2). He asks that the Court should apply his initial hourly rate set forth in his retainer agreement with Maureen at $325 per hour. He is staying with that hourly rate even though "an hourly rate of $325 for an attorney of my experience with a Manhattan based practice is . . . far below current market value." (Declaration of Frey at 3). The Court agrees that $325 is a reasonable hourly rate for Frey in this case.

The Court fixes a "reasonable" attorneys' fee to Mark S. Frey, Esq., based upon the guidance of <u>Krear</u> and its progeny and the following factors:

1. Approximately $52,000 of the plaintiff's time records are not "contemporaneous" time records. (See Declaration of Scott M. Kessler, Esq., at 2-5). The Court declines to award fees for that unrecorded time.

2. The plaintiff's counsel seeks to recover fees for his time expended with regard to issues unrelated to the plaintiff's claim for breach of the covenant of good faith and fair dealing. These issues include matters related to John Conway, a former defendant in this case. The complaint was dismissed against him. These issues also relate to the unsuccessful defense of the defendant's counterclaim for breach of fiduciary duty resulting in a verdict in favor of the defendant against the plaintiff in the sum of $65,000. According to the defendant these unrelated fees charged by the plaintiff's counsel in this application amount to the sum of $72,554.30. (See Kessler Declaration at 6 to 17). Insofar as these fees were not generated in regard to the plaintiff's one successful cause of action, the Court declines to award these fees.

3. Notwithstanding the opposition of the defendant, the Court will take into consideration the time plaintiff's counsel spent in taking depositions not relied upon at trial; issuing trial subpoenas to witnesses never called for the trial; work on an expert report not used at trial; and

proposed jury instruction never filed with the Court or served on opposing counsel.

4. The Court will not consider the plaintiff's attorneys' fee request in the sum of $877.50 with regard to a small claim lawsuit between the parties filed prior to this lawsuit.

5. The Court will not award fees for the time expended by the attorney for the plaintiff in making this fee application in the sum of $3,737.50.

Reducing the plaintiff's request of $203,617.40 by $52,000, $72,554.30, $877.50 and $3,737.50, or a total reduction of $129,169.30, leaves a net fee of $66,688.20 plus costs of $7,759.90 for the total fee and costs of $74,448.10.

However, the Court further reduces the fee based on two additional important principles. Here, unlike the facts in S.D. New York Antidote International Films, Inc. v. Bloomsbury Publishing, PLC, supra; the benefit of this litigation did not reach far beyond the immediate suit and there are no transcending principles involved. Also, under the peculiar facts of this case, the Court adheres to the principle that the fee should not exceed the amount involved in this litigation. The plaintiff recovered the sum of $40,000. However, as stated above, the Court also considers the fact that the verdict in favor of the defendant against the plaintiff on the counterclaim was the sum of $65,000. Also, under the facts of this case, to be considered in the determination of a "reasonable fee" is the plaintiff's persistent breach of the Collaborative Agreement in withholding the sum of $26,908.87 belonging to the defendant.

## II. Conclusion

Considering and weighing all of these factors, some unique to this case, the Court finds that a total "reasonable" attorneys' fee for Mark S. Frey, Esq., for representing the plaintiff Maureen Regan in this case, is the sum of $40,000 together with the additional sum of $7,759.90

in costs for a total sum of $47,759.90 to be paid by the defendant Paula Conway.

The attorney for the plaintiff shall submit a proposed judgment consistent with the verdict it its entirety and all the prior rulings of the Court including this fee award on or before March 25, 2011.

Upon entry of this judgment, the Clerk of the Court shall close this case.


**SO ORDERED**.


Dated: Central Islip, New York
March 14, 2011


                 /s/ARTHUR D. SPATT
                 ARTHUR D. SPATT
                United States District Judge